IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BECKLEY MECHANICAL, INC.,

           Plaintiff,

v.                                            CIVIL ACTION NO. 5:07-cv-00652

ERIE INSURANCE COMPANY,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

This action arises out of an claim for proceeds from an insurance policy providing coverage for loss caused by employee dishonesty that was issued by Defendant Erie Insurance Property and Casualty Co. to Plaintiff Beckley Mechanical, Inc. Pending before the Court is Defendant's Motion for Summary Judgment [Docket 16]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Discovery has closed and the matter is now ripe for the Court's consideration.

*I. FACTUAL BACKGROUND*

The material facts are not in dispute. From January 2001 until February 2007, Suzanne Snyder, a bookkeeper employed by Plaintiff, falsified Plaintiff's records to conceal approximately 293 checks that she unlawfully drafted to herself. Ms. Snyder's actions were detected, and on April 2, 2007, she was charged with seven counts of felony embezzlement and seven counts of falsifying records. She plead guilty to six counts of felony embezzlement in the Circuit Court of Raleigh

County, West Virginia, and was sentenced to six terms of one to ten years, to run consecutively, with three counts suspended. In addition, she was ordered to pay restitution in the amount of $424,024.

During the time Ms. Synder was embezzling from Plaintiff, Plaintiff maintained an "Ultraflex" insurance policy, Policy No. Q44-6850015 (the Policy), with Defendant. Following Ms. Synder's sentencing, Plaintiff contacted Defendant, seeking payment for the full amount of the embezzlement. Defendant determined that, under the Policy, Ms. Synder's actions constituted a single occurrence. Therefore, on July 12, 2007, Defendant tendered a check to Plaintiff in the amount of $10,000, which was the per-occurrence Policy limit. Asserting that each time Ms. Snyder unlawfully drafted a check to herself constituted a separate occurrence under the policy, Plaintiff filed the instant lawsuit on October 23, 2007, seeking declaratory relief regarding the terms of the Policy.

## II. APPLICABLE LAW

*A. Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, it is well-established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Catrett*, 477 U.S. at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the Court must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

    *B.    Declaratory Judgment*

The parties in the case seek declaratory judgment regarding their rights under the Policy. Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). However, "[i]t is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapillof*, 155 F.3d 488, 494 (4th Cir. 1998).

## C. *Substantive West Virginia Law*

This declaratory judgment action is based on diversity of citizenship. It is well settled that federal courts sitting in diversity are to apply the substantive law of the state in which they sit. *See generally Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938); *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F.Supp.2d 686, 694 (S.D. W. Va. 2001) ("Absent indication to the contrary, West Virginia law . . . govern[s] interpretation of the insurance policy at issue in [a] declaratory judgment action, where jurisdiction is based on diversity of citizenship."). Accordingly, the Court will apply the substantive law of West Virginia in this case.

Under West Virginia law, it is clear that "[w]hen considering whether a policy of insurance provides coverage for a particular claim of loss, we must look to the specific wording of the policy itself." *Keefer v. Ferrell*, 655 S.E.2d 94, 99 (W. Va. 2007). "Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." *Id.* (quoting Syl. pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639 (W. Va. 1985). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." *Pilling v. Nationwide Mut. Fire Ins. Co.*, 500 S.E.2d 870, 872 (W. Va. 1997) (quoting Syl. pt. 1, *Berkeley County Public Service District v. Vitro Corp. of America*, 162 S.E.2d 189 (W. Va. 1968)). "[A] court should read policy provisions to avoid ambiguities and not torture the language to create them." *Id.* (quoting *Payne v. Weston*, 466 S.E.2d 161, 166 (W. Va. 1995)).

## II. ANALYSIS

The only issue to be resolved in this case is the interpretation of the Policy and a determination of the coverage available under it. As such, declaratory judgment regarding this

matter would serve the useful purpose of settling the rights of the parties and would afford relief from uncertainty regarding the policy language. *See Kapiloff*, 155 F.3d at 494. The Policy language in question states the following:

> 11. **Employee Dishonesty**. We will pay for "loss" of "money", "securities", and business personal property and personal property of others (as described in Coverage 2) up to $10,000 per occurrence resulting from dishonest acts committed by any of your "employees" . . . . All loss caused by, or involving, one or more "employees", whether the result of a single act or a series of acts, is considered one occurrence.

(Docket 16-1 at 31 (emphasis in original).)

Defendant argues that under the above Policy language, multiple acts of embezzlement by an employee over the course of several years constitutes one occurrence. In support of its argument, Defendant cites to several cases outside of this jurisdiction that have found "a series of acts" to be an unambiguous phrase. *See, e.g., Landico, Inc. v. Am. Family Mut. Ins. Co.*, 559 N.W.2d 438 (Minn. 1997) (holding that under the employee dishonesty policy containing unambiguous occurrence and noncumulation provisions, an insured could not recover more than the policy limit for one occurrence when losses resulted from employee's actions occurring over course of several years). The insurance policy in *Landico* contained an identical definition of occurrence as the definition in question in this instance. Therefore, Defendant argues that like the *Landico* court, this Court should find that "[t]he policy unambiguously limits recovery on claims arising from one employee's misconduct to the stated policy limit." *Id.* at 440.

Plaintiff makes several arguments as to why each unlawful draft Ms. Snyder made should be considered a separate occurrence. First, Plaintiff claims that a "series of acts" under the Policy "is identical to the continuing tort or continuing cause of action." (Docket 17 at 6.) Thus, Plaintiff asserts that because the West Virginia Supreme Court has found "conversion of multiple separate

5

negotiable instruments does not amount to a continuing tort," multiple conversions cannot be considered a single occurrence under a policy of insurance. (*Id*. at 5.) However, one case cited by the Plaintiff highlights the distinction between a continuing tort and a "series of acts" under the Policy. *See Auber v. Jellen*, 469 S.E.2d 104 (W. Va. 1996).

In *Auber*, the West Virginia Supreme Court found that an insured doctor's failure to discover a patient's rectal cancer during a series of five examinations and diagnoses over a twenty-month period did not constitute a continuing tort. *Id.* at 110. Nonetheless, the court found that the doctor's actions constituted a single occurrence under the language of the insurance policy.[*] *Id.* at 108. Therefore, the West Virginia Supreme Court has already determined that a series of acts can be considered one occurrence for purposes of determining coverage under an insurance policy and still not constitute a continuing tort for purposes of tolling an applicable statute of limitations.

Moreover, as Defendant points out, "[t]he Policy does not contain any language [that] ties the interpretation of [an occurrence] to whether such series of acts would constitute a continuing tort or not." (Docket 18 at 2.) There is no reason for this Court to look to the continuous tort doctrine in interpreting the language of the Policy. Instead, the Court must give effect to the Policy's plain meaning.

Similarly, Plaintiff's second argument is without merit. Plaintiff claims that "the fact that Ms. Snyder was charged with six separate counts of embezzlement and six counts of falsifying accounts shows it was considered by the Raleigh County Prosecuting Attorney's Office as a separate and distinct causes of action." (Docket 17 at 6.) Again, the Policy makes no reference to

---

[*] The relevant policy provision in *Auber* "expressly provide[d] that '. . . all injury resulting from a series of acts or omissions in providing medical services to one person' will be *considered one incident*." *Auber*, 469 S.E.2d at 108 (emphasis in original).

determinations by the prosecuting attorney's office in its language dealing with employee dishonesty. Thus, the prosecuting attorney's decision to indict Ms. Snyder on twelve counts is irrelevant to this analysis.

Next, Plaintiff argues that the provision of the Policy regarding employee dishonesty "is at best confusing and at worst deceptive." (Docket 17 at 6.) Plaintiff takes issue with the policy purporting to provide coverage "up to $10,000 per occurrence resulting from dishonest acts," and "paragraphs later" defining "an occurrence as including a series of acts." (*Id*.) However, the policy clearly defines an occurrence as including a series of acts for purposes of the employee dishonesty provision of the Policy. This definition is located on the same page and in the same size font as the language providing $10,000 "per occurrence." (Docket 16-1 at 31.) As such, the Court finds the provision to be neither confusing nor deceptive. Therefore, Plaintiff's final argument is also unpersuasive.

The Court agrees with Defendant that the language of the Policy stating that a series of acts is considered one occurrence is clear and unambiguous. The Court looks to the plain meaning of "series," which is defined as "a number of things or events of the same class coming one after the other in spatial or temporal succession." *Merriam-Webster's Collegiate Dictionary* 1069 (10th ed. 1998). It is undisputed that Ms. Snyder unlawfully drafted a check to herself on approximately 293 occasions. Ms. Snyder's acts were of the same class and they came after one another in temporal succession. Thus, it is clear that Ms. Snyder's misconduct constitutes a series of acts under the Policy. As such, Ms. Snyder's actions are considered one occurrence for which the Policy limit is $10,000. There is no genuine issue as to any material fact in this case, and the Court **FINDS** that

Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

Based on the foregoing analysis, Defendant's Motion for Summary Judgment [Docket 16] requesting declaratory relief is **GRANTED**. This decision results in Defendant's obligation to Plaintiff under the Policy being satisfied as Defendant has already tendered a check to Plaintiff in the full amount owed, $10,000. A separate Judgment Order will enter this day implementing the rulings contained herein.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 9, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE